UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TENIAH TERCERO,<br><br>Plaintiff,<br><br>v.<br><br>C&S LOGISTICS OF<br>SACRAMENTO/TRACY LLC, et al.,<br><br>Defendants. | No.  2:24-cv-00963-DC-JDP<br><br>ORDER GRANTING PLAINTIFF'S MOTION<br>TO REMAND AND REMANDING THIS<br>ACTION TO THE SACRAMENTO COUNTY<br>SUPERIOR COURT<br><br>(Doc. Nos. 12, 13, 14, 18) |

This matter is before the court on Plaintiff's motion to remand this action to the Sacramento County Superior Court. (Doc. No. 18.) Pursuant to Local Rule 230(g), the pending motion was taken under submission to be decided on the papers. (Doc. No. 24.) For the reasons explained below, the court will grant Plaintiff's motion to remand.

**BACKGROUND**

On February 26, 2024, Plaintiff Teniah Tercero filed a class action complaint against Defendant C&S Wholesale Grocers, LLC and specially appearing Defendant C&S Logistics of Sacramento/Tracy, LLC (collectively, "Defendants") in Sacramento County Superior Court. (Doc. No. 1 at 41–68.) Plaintiff's complaint alleges nine causes of action: (1) failure to pay minimum and straight time wages in violation of California Labor Code §§ 204, 1194, 1194.2, 1197; (2) failure to pay overtime wages in violation of §§ 1194, 1198; (3) failure to provide meal periods in violation of §§ 226.7, 512; (4) failure to authorize and permit rest periods in violation

of § 226.7; (5) failure to timely pay final wages at termination in violation of §§ 201-203; (6) failure to provide accurate itemized wage statements in violation of § 226; (7) failure to indemnify employees for expenditures in violation of § 2802; (8) failure to produce requested employment records in violations of §§ 226 and 1198.5; and (9) unfair business practices in violation of California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.* (Doc. No. 1 at 53–64.) Plaintiff seeks to represent a proposed class defined as:

> All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent.

(*Id.* at 49.) Plaintiff alleges she worked for Defendants as an hourly-paid, non-exempt employee from approximately July 2021 to approximately August 2022 in Sacramento County, California. (*Id.* at 44.)

On March 28, 2024, Defendants removed this action to this federal district court pursuant to 28 U.S.C. § 1446, alleging diversity jurisdiction under the Class Action Fairness Act ("CAFA") (28 U.S.C. § 1332(d)), traditional diversity jurisdiction (28 U.S.C. § 1332(a)), and federal question jurisdiction (28 U.S.C. § 1331) arising from the complete preemption of Plaintiff's state law wage and hours claims by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). (Doc. No. 1.) Defendants' notice of removal alleges Plaintiff was represented by General Teamsters Local #150 (the "Union") at all times during her employment, and therefore her employment was governed by collective bargaining agreements between Defendant C&S Wholesale Grocers, LLC (hereinafter, "Defendant C&S Wholesale") and the Union (the "CBAs"). (*Id.* at 34; *see also* Doc. No. 1-2.)

On June 13, 2024, Plaintiff filed the pending motion to remand this action back to Sacramento County Superior Court. (Doc. No. 18.) On June 27, 2024, Defendant C&S Wholesale filed an opposition to the pending motion. (Doc. No. 30.) On July 11, 2024, Plaintiff filed her reply thereto. (Doc. No. 34.)

## LEGAL STANDARD

A defendant may remove to a federal district court "any civil action brought in a state

2

court of which the district courts of the United States have original jurisdiction." 28 U.S.C.

§ 1441(a). Federal district courts have original jurisdiction over cases involving claims arising

under federal law ("federal question jurisdiction") or where the parties are diverse citizens and the

amount in controversy exceeds $75,000, exclusive of interest and costs ("traditional diversity

jurisdiction"). 28 U.S.C. §§ 1331, 1332(a). For class actions, traditional diversity jurisdiction

exists when there is complete diversity of citizenship between any named plaintiffs and

defendants, and the amount in controversy for at least one named plaintiff plausibly exceeds

$75,000. *See Snyder v. Harris*, 394 U.S. 332, 340 (1969); *Exxon Mobil Corp. v. Allapattah Servs.,*

*Inc.*, 545 U.S. 546, 549 (2005).

   To protect the jurisdiction of state courts, removal jurisdiction is strictly construed in

favor of remand. *Harris v. Bankers Life and Cas. Co*., 425 F.3d 689, 698 (9th Cir. 2005). It is

presumed that a case lies outside the limited jurisdiction of the federal courts, and the burden of

establishing the contrary rests upon the party asserting jurisdiction. *Abrego v. The Dow Chem.*

*Co*., 443 F.3d 676, 684 (9th Cir. 2006); *see also Provincial Gov't of Marinduque v. Placer Dome,*

*Inc*., 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that

removal is proper."). If there is any doubt as to the right of removal, a federal court must reject

jurisdiction and remand the case to state court. *Geographic Expeditions, Inc. v. Estate of Lhotka*,

599 F.3d 1102, 1107 (9th Cir. 2010).

   CAFA confers original jurisdiction to federal district courts in any class action where

there are at least 100 class members, any plaintiff is diverse in citizenship from any defendant,

and the amount in controversy exceeds $5,000,000, notwithstanding interest and costs. 28 U.S.C.

§ 1332(d). CAFA was enacted "specifically to permit a defendant to remove certain class or mass

actions into federal court." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

Congress intended CAFA to be interpreted "expansively." *Id.* Unlike cases removed under

traditional diversity or federal question jurisdiction, "no antiremoval presumption attends cases

invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

However, "the burden of establishing removal jurisdiction remains, as before, on the proponent of

federal jurisdiction." *Abrego*, 443 F.3d at 685.

A defendant's notice of removal must contain "a short and plain statement of the grounds of removal," but "need not contain evidentiary submissions." *Dart Cherokee*, 574 U.S. at 83–84. A plaintiff may seek remand of a case that has been removed to federal court by "making either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)). "A facial attack accepts the truth of the [defendant's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* at 699 (citations and quotations omitted). When evaluating a facial attack, the court accepts defendant's allegations as true and draws all reasonable inferences in the defendant's favor to determine whether the allegations are sufficient to invoke the court's jurisdiction. *Salter*, 974 F.3d at 964.

By contrast, a factual attack contests the truth of the allegations themselves. *Harris*, 980 F.3d at 699. To mount a factual attack, Plaintiff "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Harris*, 980 F.3d at 700. If the plaintiff mounts a factual attack, the defendant bears the burden of showing by a preponderance of the evidence that jurisdictional requirements are satisfied. *Id.* at 699. This burden may be satisfied by submitting "affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

## ANALYSIS

Plaintiff seeks remand of this action to the Sacramento County Superior Court on the grounds that Defendants have failed to satisfy their burden of establishing (1) the amount in controversy for putative class members exceeds the $5,000,000 threshold for CAFA jurisdiction, (2) the amount in controversy for her individual claims exceeds the $75,000 threshold for traditional diversity jurisdiction, or (3) federal question jurisdiction exists based on preemption under Section 301 of the LMRA. (Doc. No. 18.) The court will first address the amount in controversy, and then turn to preemption under Section 301 of the LMRA.

\ \ \

**A.     Amount in Controversy**

Plaintiff does not dispute that her putative class exceeds 100 members and minimal diversity of citizenship exists for CAFA purposes.[1] Nor does she dispute that her citizenship as the named plaintiff is diverse from all Defendants as required for traditional diversity jurisdiction. The only issue before the court regarding diversity jurisdiction is the amount in controversy. Specifically, Plaintiff argues this case should be remanded because Defendants have failed to establish the amount in controversy exceeds $5,000,000 for jurisdiction under CAFA, or, in the alternative, $75,000 for traditional diversity jurisdiction. (*See* Doc. Nos. 18 at 14–24; 34 at 6–9.) For reasons explained below, the court concludes that Defendants have not met their burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds either jurisdictional minimum.

1.     <u>CAFA</u>

The amount in controversy is not apparent from the face of Plaintiff's complaint. (*See* Doc. No. 1 at 41–68.) Defendants' notice of removal calculates the amount in controversy for putative class members to be $6,224,009, well above CAFA's $5,000,000 threshold. (Doc. No. 1 at 25.) Defendants allege they "used payroll, employment, and operational data" to determine the amount in controversy under CAFA, including the aggregate number of workdays, shift lengths, number of pay periods, and hourly rates of pay. (*Id.* at 11–12.) Applying these data points and assumptions regarding the rates of violation, Defendants calculate unpaid minimum and straight time wages, meal and rest period premiums, waiting time penalties, damages for inaccurate wage statements, unreimbursed business expenses, and attorneys' fees, as follows:

| Claim | Amount in Controversy |
| --- | --- |
| Unpaid Minimum and Straight Time Wages | $525,316.84 |
| Unpaid Overtime/Double Time Premiums | $837,517.10 |

---

[1] In her motion to remand, Plaintiff alleges "Defendants acknowledge that removal requires more than 100 class members yet have not evidenced that this requirement is met." (Doc. No. 18 at 9.) Plaintiff's reply, however, concedes "it is undisputed that the class exceeds 100 members." (Doc. No. 34 at 9.)

| | |
|---|---|
| Meal Period Violations | $1,125,784.20 |
| Rest Period Violations | $1,154,844.90 |
| Waiting Time Penalties | $871,097.40 |
| Wage Statement Penalties | $340,000 |
| Unreimbursed Business Expenses | $124,646.76 |
| Statutory Attorneys' Fees | $1,244,801.80 |
| **Total** | **$6,224,009.00** |

(*Id.* at 25.)

In her motion to remand, Plaintiff argues Defendants' amount in controversy calculations must be set aside because they unreasonably assume labor code violations "pulled from thin air," which are contrary to the complaint's plain language. (Doc. No. 18 at 17.) More precisely, Plaintiff alleges that Defendants assume a 100% violation rate for her claims in order to inflate the amount in controversy, ignoring limiting language in her complaint that labor violations occurred "at times" to "some [class members]."[2] (*Id.* at 16–21.)

Plaintiff further argues Defendants have failed to provide competent supporting evidence for the data points and assumed violation rates used to estimate the amount in controversy. (Doc. No. 18 at 14–16.) Despite having access to wage records, the only evidence Defendants proffered with their notice of removal was the declaration of Brandon Driscoll, associate HR business partner for Defendant C&S Wholesale and its subsidiaries. (Doc. No. 1-2.) Mr. Driscoll's

---

[2] In support of her argument that Defendants' assumed violation rates are unreasonable given limiting language in the complaint, Plaintiff requests that the court take judicial notice of complaints filed by her counsel in other actions, as well as subsequent remand orders issued by the courts in those cases. (Doc. Nos. 18 at 9 n.3; 19.) Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b). Courts regularly take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). However, "judicial notice is not required for the court to consider [] cited opinions as matters of law and potentially persuasive precedents." *Phillips v. Nat'l City Bank of Ind. First Franklin Div.*, 462 F. App'x 666, *1 n.1 (9th Cir. 2011). Therefore, the court will take judicial notice of the complaints plaintiff's counsel filed in other actions, but not the orders ruling on motions to remand in those cases.

declaration describes CBAs relevant to Plaintiff's employment but does not provide any information related to Defendants' amount in controversy calculations. (*Id.*)

In opposition, Defendant C&S Wholesale argues Plaintiff has not adequately challenged its amount in controversy calculations because she has not submitted proof that less than $5 million is in controversy. (Doc. No. 30 at 16–17.) Defendant C&S Wholesale asserts that "when a removing defendant's [amount in controversy] calculations are challenged by a remand motion, both sides must submit proof, and then the [c]ourt decides, based on a preponderance of the evidence if the AIC requirement is satisfied." (*Id.* at 16) (citing *Dart Cherokee*, 574 U.S. at 88). According to Defendant C&S Wholesale, Plaintiff's failure to submit evidence to contradict Defendant's AIC calculations is an independent basis upon which to deny her motion to remand. (*Id.* at 17).

Defendant C&S Wholesale also contends that it is entitled to rely on Plaintiff's allegations in a separate related action, *Tercero v. Sacramento Logistics LLC, et al.*, No. 2:24-cv-00953-DC-JDP ("*Tercero I*"), to support its 100% violation rate assumptions. (*See e.g.*, Doc. Nos. 1 at 12–13, 15, 22; 30 at 9, 17–22.) For example, Defendant C&S Wholesale contends that a 100% violation rate is appropriate for Plaintiff's meal and rest break violation claims because Plaintiff's complaint in *Tercero I* alleges Defendants "consistently" failed to provide compliant breaks as a matter of "policies and/or practices" and putative class members "were frequently if not always unable to take compliant rest periods."[3] (Doc. No. 30 at 22.)

Finally, although Defendant C&S Wholesale maintains the notice of removal is sufficient to establish the amount in controversy under CAFA, it nevertheless concurrently filed along with its opposition to the pending motion a supplemental declaration from Mr. Driscoll listing the data points used to calculate the amount in controversy. (Doc. No. 30-2 at ¶ 5.) Mr. Driscoll's supplemental declaration is based upon his personal knowledge and review of business information and records pertaining to Plaintiff and the class during the relevant class period. (*Id.*

---

[3] Defendant C&S Wholesale's opposition miscites to Plaintiff's complaint in this action for these allegations. (Doc. No. 30 at 22.) Plaintiff's complaint in this action does not contain such allegations. (Doc. No. 1 at 41–68.) However, these allegations are present in Plaintiff's *Tercero I* complaint. (*See* Doc. No. 1 at 112, 114, 121.)

1   at ¶¶ 1, 4).

2                 **a.**    *Evidentiary Burden*

3        At the outset, the court will address the parties' dispute regarding the evidentiary burden

4   for removal. Defendant C&S Wholesale argues that Plaintiff has failed to properly challenge its

5   amount in controversy calculation because she has not presented rebuttal evidence. (Doc. No. 30

6   at 16–17.) Plaintiff counters that she is not required to submit evidence to make a factual attack

7   on Defendants' amount in controversy allegations because Defendants bear the evidentiary

8   burden of establishing jurisdiction by a preponderance of the evidence. (Doc. No. 34 at 2–3.) The

9   court agrees with Plaintiff.

10        Plaintiffs can mount a factual attack by making a reasoned argument that Defendants'

11   assumptions are not supported by the evidence, without introducing extrinsic rebuttal evidence.

12   *See Harris*, 980 F.3d at 700 (plaintiff is not required to proffer an alternative assumption

13   grounded in real evidence to mount a factual attack). Defendants' "burden of establishing

14   removal" does not shift to Plaintiff at any time. *Abrego*, 443 F.3d at 678, 685. "This approach is

15   akin to the procedure in the summary judgment context whereby, if the party with the initial

16   burden of production fails to carry its burden, the other party 'has no obligation to produce

17   anything.'" *Giles v. Nat'l Express Transit Corp.*, No. 1:22-cv-00257-JLT-BAM, 2023 WL

18   2681974, at *1 (E.D. Cal. Mar. 29, 2023) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz

19   Cos., Inc*., 210 F.3d 1099, 1102–03 (9th Cir. 2000)). Put differently, if the court determines

20   Defendants have not satisfied their burden of establishing removal jurisdiction, it need not

21   address Plaintiff's evidence or lack thereof.

22              **b.**    *Violation Rates*

23        To determine whether CAFA's amount in controversy threshold is satisfied, "courts first

24   look to the complaint." *Ibarra*, 775 F.3d at 1197. A removing defendant is permitted to rely on "a

25   chain of reasoning that includes assumptions" when calculating an amount in controversy. *Id. at*

26   1199. However, a defendant's "assumptions cannot be pulled from thin air." *Id.* at 1199. The

27   assumptions "need some reasonable ground underlying them." *Id; see also Ellis v. Pac. Bell Tel.*

28   *Co.*, No. 8:10-cv-01141-CJC-FFM, 2011 WL 499390, at *2–3 (C.D. Cal. Feb. 10, 2011) (noting

1    that a defendant may rely on good-faith calculations to satisfy its burden, but those calculations

2    cannot be based on unreasonable or speculative assumptions). "Reasonable grounds may be

3    established on the basis of the complaint and extrinsic evidence." *Moore v. Dnata US Inflight*

4    *Catering LLC*, No. 3:20-cv-08028-JD, 2021 WL 3033577, at *2 (N.D. Cal. July 19, 2021)

5    (citation omitted).

6        In wage-and-hour cases, it is common that "the amount in controversy turns on the

7    frequency of the alleged violations of California labor laws." *Hayes v. Salt & Straw, LLC*, No.

8    2:20-cv-03063-CJC-KS, 2020 WL 2745244, at *3 (C.D. Cal. May 27, 2020). "Whether the

9    alleged violations occur from time to time, as a matter of pattern and practice, or uniformly, as

10   alleged in the complaint, has a significant impact on the amount in controversy

11   calculation." *Cocroft v. EquipmentShare.com Inc.*, No. 3:24-cv-00645-BAS-AHG, 2024 WL

12   3877274, at *7 (S.D. Cal. Aug. 19, 2024). "This frequency informs the court's adoption of a

13   violation rate expressed as a percentage when calculating the amount in controversy." *Id*.

14       Plaintiff's motion to remand attacks the violation rate assumptions underlying

15   Defendant's amount in controversy estimates for all claims. The court begins by assessing the

16   reasonableness of Defendants' violation rate assumptions for Plaintiff's meal and rest break

17   claims because those claims account for a significant portion ($2,280,629.10) of Defendants'

18   $6,224,009 amount in controversy estimate, and the $5 million threshold cannot be met in this

19   case without the amounts in controversy for those claims. (Doc. No. 1 at 25.)

20       Under California Labor Code § 512(a), employers must provide an uninterrupted meal

21   period of not less than thirty minutes to employees who work more than five hours per day. A

22   second meal period must be provided if an employee works more than ten hours per day. Cal.

23   Lab. Code § 512(a). Similarly, employers must permit employees to take rest periods for ten

24   minutes per four hours worked in a workday. Cal. Lab. Code § 226.7(b). Employers are required

25   to pay an employee an additional one hour of pay at the employee's regular pay rate for each

26   workday that a compliant meal or rest period is not provided. Cal. Lab. Code § 226.7(c).

27       Plaintiff's complaint alleges that "Defendants, at times, failed to provide Plaintiff and the

28   Class, or some of them, with both meal periods as required by California law." (Doc. No. 1 at 56.)

It further alleges that "Defendants at times failed to authorize Plaintiff and the Class, or some of them, to take rest breaks, regardless of whether employees worked more than four hours in a workday." (*Id.* at 56–57.) Plaintiff claims that the class is entitled to be paid "one hour of additional wages for each workday he or she was not provided with all required meal period(s)," and "one hour of premium wages rate for each workday he or she was not provided with all required rest break(s)." (*Id.* at 56–57.)

Based on these allegations, Defendants' notice of removal alleges it is reasonable to assume that "each of the [putative class members] will claim to have not been provided nor paid premiums for *one* non-compliant meal break *each day* they worked a meal-break eligible shift (i.e. over five hours) during the 4-Year [statute of limitations] period." (Doc. No. 1 at 17.) Defendants also argue they can reasonably assume "each of the [putative class members] who worked a rest eligible shift (i.e. more than 3.5 hours in a workday) will claim to have not been authorized or permitted to take at least one rest break nor paid a rest break premium for the missed rest break on each 3.5-Hour Workday during the 4-Year [statute of limitations] Period." (*Id.* at 18.) Put differently, Defendants claim that 100% of class members experienced one meal period and one rest break violation every shift that they were eligible to receive one.

Defendants assert their timekeeping and payroll data shows there were 47,804 five-hour workdays and 49,038 three-and-a-half hour workdays recorded during the relevant time period. (Doc No. 1 at 11, 17, 19.) Defendants also identify the average base regular rate of pay as $23.55. (*Id.* at 11.) Assuming a 100% violation rate, Defendants calculate an amount in controversy for Plaintiff's meal period claim as $1,125,784.20 ($23.55 average regular rate of pay × 47,804 total number of putative meal break violations) and rest period claim as $1,154,844.90 ($23.55 average regular rate of pay × 49,038 total number of putative rest break violations).

The assumption underlying Defendants' calculation—that putative class members received *none* of the meal or rest breaks they were entitled to during eligible shifts—is not supported by Plaintiff's complaint. The complaint states that meal and rest break violations occurred "at times" to "some [putative class members]." (Doc. No. 1 at 56–57.) "The language 'at times' and 'some of them' . . . clearly limit[s] the allegations regarding how many employees

1   were affected and how often they were affected." *Davis v. Empire Chauffeur Serv., Ltd*., No.

2   2:23-cv-07968-MEMF-SSC, 2024 WL 1217377, at *6 (C.D. Cal. Mar. 18, 2024). District courts

3   have held that language indicating violations occurred "at times" and to "some of" the class

4   members cannot reasonably support a 100% violation rate. *Id.*; *Duran v. Allegis Glob. Sols., Inc*.,

5   No. 3:20-cv-09025-JD, 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021) (finding a 100%

6   violation rate unreasonable where plaintiff alleged that defendants "acted 'at times' in a manner

7   that violated California state employment laws" and "the violations may have happened to only

8   'some' of the putative class members"); *cf. Powell v. USI Ins. Serv., LLC*, No. 23-cv-04129-

9   ODW-BFM, 2023 WL 6276578, at *4 (C.D. Cal. Sept. 25, 2023) (a 60% violation rate for meal

10  periods and a 30% violation rate for rest periods was proper where plaintiff alleged that

11  defendants "sometimes, but not always" violated protections).

12       The court acknowledges that Plaintiff's complaint language is "open to multiple

13  interpretations as to the frequency of violations and number of affected employees." *Calderon v.*

14  *Bio-Med. Applications of Mission Hills, Inc*., No. 2:23-cv-03382-MEMF-MRW, 2023 WL

15  6130524, at *6 (C.D. Cal. Sept. 18, 2023). But Defendants have not provided any support to show

16  their interpretation of a 100% violation rate is reasonable in this case. *Ibarra*, 775 F.3d at 1198–

17  99 (the removing party has the "burden to show that its estimated amount in controversy relied on

18  reasonable assumptions"). It would be just as consistent with the complaint to assume a frequency

19  of one or three violations per week as it is to assume one violation for every shift that class

20  members were eligible to receive a meal or rest break. *See Duran*, 2021 WL 3281073, at *3

21  (noting that an assumption of once-per-week for meal and rest break violations was arbitrary

22  where defendant did not provide any evidence to tip the analysis in its direction); *Li v. Golftec*

23  *Mgmt. LLC*, No. 3:24-cv-01678-RFL, 2024 WL 4553148, at *2 (N.D. Cal. May 29, 2024) ("In

24  the absence of any evidence from [defendant], the [c]ourt simply has no reasonable basis to

25  identify whether violations occurred only every other week, every month, or every other month,

26  on average as to each putative class member.").

27       In an effort to support their 100% violation rate, Defendants cite to Plaintiff's broad meal

28  and rest break allegations in *Tercero I*, in which Plaintiff alleges "consistent," "frequent[]," and

"policies and/or practices" of meal and rest break violations. (Doc. No. 1 at 111–15.) Defendants also cite to cases where district courts have accepted 100% violation rates as reasonable based on allegations that an employer engaged in "consistent" or "uniform" violations. *See e.g.*, *Mendoza v. OSI Indus., LLC*, No. 5:22-cv-01202-JGB-SP, 2022 WL 4291327, at *5 (C.D. Cal. Sept. 16, 2022) (finding a 100% violation rate reasonable where plaintiffs alleged defendant's official policy uniformly prevented class members from taking compliant meal and rest breaks); *Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d 1141, 1149–50 (C.D. Cal. 2010), *affirmed* 631 F.3d 1010 (9th Cir. 2011) (finding a 100% violation rate reasonable where plaintiff alleged class members "consistently" worked without meal breaks). Defendants' "assumptions based on the [*Tercero I*] complaint are unreasonable because they are based on language not found in the . . . operative pleading in this case." *Santos v. Pictsweet Co*., No. 2:24-cv-01281-AB-SSC, 2024 WL 3357832, at *4 (C.D. Cal. July 9, 2024).[4] Accordingly, the court finds Defendants' assumed 100% violation rate untethered to allegations in Plaintiff's complaint.

        c.    *Defendants' Supporting Evidence*

     Defendants have not offered any other "extrinsic evidence independently validating" their assumptions of a 100% violation rate for meal and rest break claims. *Duran*, 2021 WL 3281073, at *3. Defendants' only supporting evidence for its CAFA amount in controversy calculations is Mr. Driscoll's supplemental declaration. (Doc. No. 30-2.) But, as Plaintiff emphasizes in her motion and reply brief, Mr. Driscoll's supplemental declaration is inadequate because it does not mention any alleged violation rates, or the percentage of class members affected by Defendants' violations. (Doc. Nos. 18 at 16, 34 at 3–4); *see also Gipson v. Champion Home Builders, Inc.*, No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503, at *5 (E.D. Cal. July 20, 2020) (determining

---

[4] In any event, some district courts have determined that a 100% violation rate may be unreasonable even where there are "policy and practice" allegations. *See e.g.*, *Ibarra*, 775 F.3d at 1199 ("While it is true that the complaint alleges that [the defendant] maintains 'an institutionalized unwritten policy that mandates' the employment violations alleged in the complaint, including the denial of meal and rest periods, this does not mean that such violations occurred in each and every shift."); *Powell v. USI Ins. Serv., LLC*, No. 2:23-cv-04129-ODW-BFM, 2023 WL 6276578, at *4 (C.D. Cal. Sept. 25, 2023) (complaint allegations of a pattern and practice could not reasonably support a 100% violation rate); *Davis,* 2024 WL 1217377, at *6 (holding that "policy" and "practice" cannot reasonably be read as 100% of employees).

1    that a declaration alone was not sufficient to support defendant's amount in controversy where it

2    failed to "provide any evidence regarding the frequency of violations with respect to each of

3    plaintiff's claims or the violation rate generally").

4            Because Defendants' assumed violation rate is not tied to the complaint or any evidence,

5    the court concludes that it is arbitrary and unreasonable. *Ibarra*, 775 F. 3d at 1199 (defendants

6    must provide some support for their assumed violations rates, they cannot be "pulled from thin

7    air"). "Where a defendant's assumption is unreasonable on its face without comparison to a better

8    alternative, a district court may be justified in simply rejecting that assumption and concluding

9    that the defendant failed to meet its burden." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28

10   F.4th 989, 996 (9th Cir. 2022); *Li*, 2024 WL 4553148, at *2 (concluding that defendant failed to

11   satisfy its burden of establishing a sufficient amount in controversy where its assumed violation

12   rate was unreasonable, and no alternative violation was provided to the court). Indeed, courts

13   have declined to "propose a reasonable violation rate" because the "[c]ourt need only weigh the

14   reasonableness of the removing party's assumptions, not supply further assumptions of its own."

15   *Peters v. TA Operating LLC*, No. 5:22-cv-01831-JGB-SHK, 2023 WL 1070350, at *9 (C.D. Cal.

16   Jan. 26, 2023) (cleaned up). When combined, Defendants' estimates for Plaintiff's meal and rest

17   break claims account for $2,280.629 of the total $6,224,009.00 amount in controversy. (Doc. No.

18   1 at 25.) Therefore, the court need not address Defendants' valuations of the remaining claims

19   because even assuming they are correct, their combined total is below CAFA's $5,000,000

20   threshold. In sum, the court concludes that the Defendants have failed to meet their burden of

21   showing by preponderance of the evidence that CAFA's jurisdictional requirements are satisfied.

22           2.      Traditional Diversity Jurisdiction

23           Defendants' notice of removal calculates the individual amount in controversy for

24   Plaintiff to be $96,275.33, above the $75,000 threshold for traditional diversity jurisdiction. (Doc.

25   No. 1 at 31.) Defendants allege they used "Plaintiff's payroll, employment, and operational data"

26   to determine the amount in controversy for traditional diversity jurisdiction, including Plaintiff's

27   number of workdays, shift lengths, number of pay periods, and hourly rates of pay. (*Id.* at 26–27.)

28   Applying these data points and many of the same assumptions used to calculate the amount in

controversy under CAFA, Defendants calculate Plaintiff's unpaid minimum and straight time wages, liquidated damages, meal and rest period premiums, waiting time penalties, unreimbursed business expenses, and attorneys' fees, as follows:

| Claim | Amount in Controversy |
|---|---|
| Unpaid Minimum and Straight Time Wages and Liquidated Damages | $1,911.45 |
| Unpaid Overtime/Double Time Premiums | $4,669.73 |
| Meal Period Violations | $3,675.36 |
| Rest Period Violations | $3,693.03 |
| Waiting Time Penalties | $6,789.00 |
| Unreimbursed Business Expenses | $536.76 |
| Statutory Attorneys' Fees | $75,000 |
| **Total** | **$96,275.33** |

(*Id.* at 31.)

With respect to statutory attorneys' fees, Defendants estimate Plaintiff's counsel will spend "(a) at least 100 hours litigating Plaintiff's *individual* claims on written discovery and related motions (35 hours), non-expert depositions (20 hours), non-discovery motion practice, including dispositive motions (40 hours), and expert witness discovery and depositions (5 hours); and (b) at least 50 additional hours prosecuting those claims at trial or arbitration (40 hours) and engaging in post-trial or post-arbitration motions (10 hours)." (Doc. No. 1 at 30–31.) Assigning Plaintiff's counsel an "average hourly rate of $500 per hour," Defendant calculate attorneys' fees in the amount of $75,000 (150 hours × $500 per hour), or 77% of the $96,275.33 individual amount in controversy for Plaintiff's claims. (*Id.* at 31.) Defendant's notice of removal does not include evidence or support for this estimation. (*Id.*) In Defendants' view, their attorneys' fees estimate is "conservative." (*Id.*)

In her motion to remand, Plaintiff argues that Defendants' attorneys' fees calculation lacks

evidentiary support. (Doc. No. 18 at 23.) In addition, Plaintiff alleges Defendants' attorneys' fees estimate is flawed because "Defendants fail to take into account that any future attorneys' fees will be spread out across the class and not just attributed to the named plaintiff." (*Id.*) Defendant C&S Wholesale counters that its statutory attorneys' fees are properly "informed by defense counsel's extensive experience in litigating similar cases." (Doc. No. 30 at 15.) In support of its opposition, Defendant C&S Wholesale provides the declaration of its counsel of record, Attorney Matthew C. Kane. (Doc. No. 30-1.) Attorney Kane states that for the last 20 years, his practice has almost exclusively focused on employment and wage and hour litigation. (*Id.* at ¶ 2.) Based on his experience and extensive knowledge, Attorney Kane estimates that Plaintiff's counsel will spend at least 150 hours litigating Plaintiff's individual claims. (*Id.* at ¶ 5.)

              a.    *Type of Jurisdictional Challenge*

As an initial matter, the parties dispute whether Plaintiff mounts a facial or factual challenge to Defendants' amount in controversy allegations for traditional diversity jurisdiction. (Doc. Nos. 30 at 10–13; 34 at 2–3.) Defendant C&S Wholesale contends that Plaintiff's motion to remand presents a purely facial attack because it focuses on the lack of evidence Defendants presented with their notice of removal, rather than challenging the rationality or factual basis for Defendants' amount in controversy allegations. (Doc. No. 30 at 10–13, 17.) For this reason, Defendant C&S Wholesale further contends its traditional diversity jurisdiction allegations must be "taken as true." (*Id.* at 13.) Plaintiff counters that she has mounted a factual attack by challenging "the truth, rationality, and factual basis" of Defendants' amount in controversy calculations. (Doc. No. 34 at 3.)

The court agrees that Plaintiff has mounted a factual attack on Defendants' amount in controversy allegations. Rather than accepting the truth of Defendants' amount in controversy allegations, Plaintiff challenges both the lack of evidence supporting Defendants' calculations and the reasonableness of assumptions underlying Defendants' calculations. (*See* Doc. No. 18 at 2, 6–9, 11–13, 15); s*ee Rodriguez v. Rentokil N. Am., Inc*., No. 8:24-cv-01356-DOC-DFM, 2024 WL 4467517, at *3 (C.D. Cal. Oct. 10, 2024) (plaintiff mounted a factual attack where they not only challenged the lack of evidence but the factual assumptions being made by the defendant). For

example, Plaintiff emphasizes that Defendants include statutory attorneys' fees in their amount in controversy calculation for Plaintiff's individual claims, but those fees are not awarded solely to a named plaintiff; they are allocated amongst the class. (Doc. No. 18 at 24.) Because the court concludes that Plaintiff has mounted a factual rather than facial attack, it will "apply the higher evidentiary standard requiring the Defendant[s] to submit 'competent proof' that shows, by a preponderance of the evidence, that the [amount in controversy is] satisfied." *Fuentes v. Hous. Auth. of the City of L.A.*, No. 2:23-cv-03295-SPG-JPR, 2023 WL 5530027, at *3 (C.D. Cal. Aug. 25, 2023) (citing *Harris*, 980 F.3d at 701).

### b.  *Reasonableness of Defendants' Calculations*

Attorneys' fees may be "considered in determining the amount in controversy if such fees are recoverable by plaintiff, either by statute or by contract." *Campbell v. Hartford Life Ins. Co.*, 825 F. Supp. 2d 1005, 1009 (E.D. Cal. 2011) (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)). Future attorneys' fees awards may be included in determining the amount in controversy under fee-shifting statutes. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018). However, district courts may exclude future fees if they are too speculative. *Id.* It bears repeating that that there is a strong presumption against removal on traditional diversity jurisdiction grounds. *Geographic Expeditions,* 599 F.3d at 1107. Defendants must overcome this strong presumption by "us[ing] 'summary-judgment-type evidence' to show that it is 'more likely than not' that the amount in controversy (including attorneys' fees) exceeds $75,000." *Schneider v. Ford Motor Co.*, 441 F. Supp. 3d 909, 914 (N.D. Cal. 2020) (quoting *Fritsch*, 899 F.3d at 795–96).

Defendants have failed to meet their burden of proving the amount in controversy exceeds $75,000 for traditional diversity jurisdiction because their future attorneys' fees estimate is speculative. (Doc. Nos. 18 at 23; 34 at 8.) Defendants' reliance on Attorney Kane's declaration is inadequate to support their attorneys' fees calculation for two reasons. First, Attorney Kane's declaration does not mention, let alone support, Defendants' assumption that Plaintiff's counsel will bill at $500 an hour. Defendants' submission that Plaintiff's counsel will charge $500 an hour for all work performed on Plaintiff's individual claims is pure conjecture, which the court

1    cannot use to determine the reasonableness of Defendants' fee estimate.

2          Second, even assuming the hourly billing rate is $500 as Defendants allege, Attorney

3    Kane's declaration does not demonstrate why his estimate that it would take at least 150 hours to

4    litigate Plaintiff's individual claims is reasonable. (*See* Doc. No. 30-1 at ¶¶ 4–6.) Attorney Kane

5    relies solely on his experience litigating wage and hour matters, he does not explain what specific

6    factors in this case led him to make his estimates. *See Elias v. Integon Preferred Ins. Co.*, No.

7    2:24-cv-01981-WLH-RAO, 2024 WL 2732228, at *2 (C.D. Cal. May 28, 2024). Attorney Kane's

8    estimate "lacks the type of evidentiary support that typically allows for the inclusion of

9    [attorneys'] fees" in an amount in controversy calculation, "such as fee petitions submitted in

10   similar cases." *Newsome v. FCA USA LLC*, No. 1:20-cv-01189-JLT-BAK, 2022 WL 408631, at

11   *6 (E.D. Cal. Feb. 10, 2022); *see also Martinez v. Ford Motor Co.*, No. 1:18-cv-01607-LJO-JLT,

12   2019 WL 1988398, at *7 (E.D. Cal. May 6, 2019) (defendant included "five petitions for

13   attorneys' fees filed in other similar cases" to support its amount in controversy calculation).

14         Defendants' attorneys' fees assumptions are also flawed because they fail to account for

15   the impact of class claims. Defendants allege that their attorneys' fees calculation is based solely

16   on work required for Plaintiff's individual claims. (Doc. No. 1 at 30–31.) But Attorney Kane's

17   estimate includes legal work that would be performed on behalf of the entire class, including

18   propounding discovery and preparing for trial. (Doc. No. 30-1); *see Rodriguez v. Goodrich Corp.*,

19   No. 2:14-cv-01026 JAM AC, 2014 WL 3842904, at*4 (E.D. Cal. Aug. 1, 2014) (defendants'

20   attorneys' fees estimates were not based solely on fees applicable to plaintiff because they

21   included pretrial activities that are typically "conducted on behalf of the entire putative class").

22   Furthermore, if Plaintiff is successful on the merits of her claims, she would be entitled to an

23   award for attorneys' fees pursuant to California Labor Code Section 1194, which does not

24   authorize award of fees "solely to named plaintiffs in a class action," but rather to "any

25   employee" who prevails on his or her claim. (*See e.g.*, Doc. No. 1 at 54–55, 58); *Rodriguez*, 2014

26   WL 3842904, at *4. "In such cases, courts determine the plaintiff's appropriate share of

27   attorneys' fees by distributing the total estimated fees on a pro rata basis amongst the named

28   plaintiff(s) and class members." *Jurado v. Aequor Heathcare Servs., LLC*, No. 2:21-cv-02633-

1  VAP-AS, 2021 WL 2178846, at *2 (C.D. Cal. May 27, 2021). As Plaintiff notes, Defendants

2  have not attempted to estimate her pro-rata share of attorneys' fees. (*See* Doc. Nos. 18 at 23, 30-

3  1).

4        For these reasons, Defendants have not met their burden to show by a preponderance of

5  the evidence that the amount in controversy requirement is satisfied. Even if the court were to

6  adopt the rest of Defendants' calculations in full, the total would still fall below the $75,000

7  threshold. (Doc. No. 1 at 31.) Therefore, the inadequacy of Defendants' attorneys' fees estimate is

8  fatal to removal on traditional diversity jurisdiction grounds.

9  **B.  Preemption under Section 301 of the LMRA**

10        Section 301 of the LMRA provides federal courts with original jurisdiction, regardless of

11  the amount in controversy or citizenship of the parties, over any lawsuits "for violation of

12  contracts between an employer and a labor organization representing employees in an industry

13  affecting commerce." 29 U.S.C. § 185(a). In the specific context of preemption under Section 301

14  of the LMRA, the Ninth Circuit has recognized that preemption "has such 'extraordinary pre-

15  emptive power' that it 'converts an ordinary state common law complaint into one stating a

16  federal claim for purposes of the well-pleaded complaint rule.'" *Curtis v. Irwin Indus., Inc.*, 913

17  F.3d 1146, 1152 (9th Cir. 2019) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)); *see*

18  *also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-

19  question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that

20  federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's

21  properly pleaded complaint.").

22        In *Burnside v. Kiewit Pacific Corp*., 491 F.3d 1053 (9th Cir. 2007), the Ninth Circuit

23  established a two-part test to determine whether a state law claim is preempted by Section 301 of

24  the LMRA. The first step requires courts to consider "whether the asserted cause of action

25  involves a right conferred upon an employee by virtue of state law, not by a [collective bargaining

26  agreement]." *Burnside*, 491 F.3d at 1059. At this first step, courts consider "the legal character of

27  a claim, as 'independent' of rights under the collective-bargaining agreement and not whether a

28  grievance arising from 'precisely the same set of facts' could be pursued." *Livadas v. Bradshaw*,

512 U.S. 107, 123 (1994) (cleaned up). "If the right exists solely as a result of the [collective bargaining agreement], then the claim is preempted" and the analysis ends without proceeding to step two. *Burnside*, 491 F.3d at 1059. If not, the court proceeds to the second step and asks whether a plaintiff's state law right is nevertheless "substantially dependent" on interpretation of the collective bargaining agreement. *Burnside*, 491 F.3d at 1059. "[T]he term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000). If the claim merely requires "looking to" the collective bargaining agreement, then the claim it is not preempted. *Burnside*, 491 F.3d at 1060. If interpretation of the collective bargaining agreement is required, then the claim is preempted. *Id.*

Defendants assert that this court has federal question jurisdiction because Plaintiff's overtime and meal and rest break claims are preempted by Section 301 of the LMRA. (Doc. Nos. 1 at 32–37; 30 at 26–28.) Specifically, Defendants allege that adjudication of Plaintiff's claims is substantially dependent on interpretation of the CBAs between Defendant C&S Wholesale and the Union under step two of the *Burnside* test. (*Id.*) Defendants assert that Plaintiffs' claims are predicated on the theory that Defendant failed to pay for overtime hours and meal and rest breaks, and California law requires the payment of overtime wages and premium pay for non-compliant meal and rest breaks at the "regular rate of pay." (Doc. No. 30 at 27.) The CBAs state that the overtime rate shall be "one and one-half (1 ½) times the straight time rate," but do not define the "straight time rate" or "regular rate of pay" for purposes of calculating overtime wages and break premiums. (*Id.* 27–28.) Therefore, Defendants argue that the court will have to analyze forms of pay provided by the CBAs and decide if they should have been included in employees' "regular rate." (*Id.* at 28.)

Defendants analogize this case to *McKinley v. Southwest Airlines* Co., No. 2:15-cv-02939-AB-JPR, 2015 WL 2431644 (C.D. Cal. May 19, 2015), in which the court held the plaintiff's overtime rate required interpretation of a collective bargaining agreement and was therefore preempted by Section 301 of the LMRA. There, the collective bargaining agreement governing plaintiff's employment did not explicitly define plaintiff's regular rate of pay for the purpose of

1    calculating overtime pay. *Id.* at *8. Instead, it applied multipliers to employees' hourly rate. *Id.*

2    However, the collective bargaining agreement did not state the types of renumeration that were to

3    be included in the hourly rate. *Id.* Because plaintiff alleged that defendant did not calculate and/or

4    factor all renumeration earned in the regular rate of pay, the court concluded that it would have to

5    "examine each form of pay provided by the [collective bargaining agreement], determine when

6    that pay was due, and then decide whether the pay should have been included in [p]laintiff's

7    regular rate." *Id.* at *6. In other words, the court "would have to consider the interaction of

8    multiple [collective bargaining agreement] provisions to calculate [p]laintiff's regular rate of

9    pay." *Id.*

10          Defendants' reliance on *McKinley* is unavailing. In *McKinley*, defendant's "liability

11   hing[ed] on whether it properly calculated [p]laintiff's regular rate of pay," which required the

12   court to evaluate "many different provisions" of the collective bargaining agreement to assess

13   plaintiff's claim. *McKinley*, 2015 WL 2431644, at *8. By contrast here, Plaintiff does not allege

14   Defendants miscalculated their regular rate of pay and the court does not need to consider the

15   interaction of multiple CBA provisions. *See Peters v. RFI Enters., Inc.*, No. 5:18-cv-01187-BLF,

16   2018 WL 3869564, at *6 (N.D. Cal. Aug. 15, 2018) (distinguishing *McKinley* where the court did

17   not need to consider the interaction of multiple collective bargaining agreement provisions to

18   determine the regular rate of pay because employees' hourly rates were clearly set forth in an

19   addendum to the agreement). Plaintiff's allegations focus on Defendants' failure to pay for

20   overtime work and missed meal and rest breaks. (Doc. No. 1 at 55–57.) As Plaintiff correctly

21   notes, employees are paid wages according to "Appendix A" of the CBAs, which lists hourly

22   rates of pay for different positions. (Doc. No. 34 at 11.) The CBAs state that the overtime rate is

23   "one and one-half (1 ½) times the straight time rate." (Doc. No. 1-2 at 12, 52.) Thus, the CBAs

24   provide instructions on how to calculate the regular rate of pay for purposes of calculating

25   overtime wages with a compensation formula that is not complicated. *See Div. of Lab. Standards*

26   *Enf't v. Save Mart Supermarkets*, No. 2:21-cv-07402-ODW, 2022 WL 837206, at *5 (C.D. Cal.

27   Mar. 21, 2022) (concluding interpretation of collective bargaining agreements was not required

28   where they provided a table of wage rates from which the court could "readily determine in a

1    clear and straightforward manner the [employees'] regular hourly rates of pay"); *Flournoy v.*

2    *Watts Healthcare Corp.*, No. 2:20-cv-06607-RGK-SK, 2020 WL 5960686, at *5 (C.D. Cal. Oct.

3    6, 2020) (court only needed to reference rather than interpret a collective bargaining agreement

4    where plaintiff's claim was that defendant failed to pay for overtime hours worked and not that

5    defendant misapplied a complex premium schedule).

6         Further, Defendants fail to identify any active dispute between the parties regarding the

7    regular rate of pay used to calculate premiums. *See Alaska Airlines Inc. v. Schurke*, 898 F.3d 904,

8    921 (9th Cir. 2018) ("[C]laims are only preempted to the extent there is an active dispute over

9    'the meaning of contract terms.'"); *Anguiano v. Mann Packing Co.*, No. 5:19-cv-02133-VKD,

10   2019 WL 2929789 (N.D. Cal. July 8, 2019) ("The [c]ourt rejects [defendant's] suggestion that the

11   absence of an express definition for a term used in a [collective bargaining agreement] necessarily

12   creates [] a dispute."). Notably, Defendants do not specify how their definition of the regular rate

13   of pay or straight-time rate differs from Plaintiff's. Nor do Defendants claim that the regular rate

14   of pay *cannot* be determined based on the hourly rates for various job classifications listed in

15   Appendix A. *See e.g.*, *Peters*, 2018 WL 3869564, at *6 (court did not need to interpret a

16   collective bargaining agreement to determine the amount of overtime pay where the regular rate

17   of pay was "indisputably" the hourly rate set forth in an addendum to the agreement). In fact,

18   Defendants acknowledge in their notice of removal that "Appendix A of the CBAs sets forth the

19   bargained for regular rates of pay for covered employees." (Doc. No. 1 at 35.) Although the court

20   may need to refer to the CBAs to calculate premiums, referring to the CBAs is not considered

21   interpretation. *See e.g.*, *Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806, 813 (C.D. Cal. 2020)

22   ("It is not enough for Defendants to provide a laundry list of provisions that they allege the

23   [c]ourt must interpret to resolve Plaintiffs claims; Defendants must explain why interpretation, as

24   opposed to mere reference to the [collective bargaining agreement], is necessary."); *Vasserman v.*

25   *Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 957–58 (C.D. Cal. 2014) (mere reference

26   to a collective bargaining agreement is not enough to find a claim substantially dependent on the

27   agreement). Because Defendants have not established that interpretation of the CBAs is required

28   to adjudicate Plaintiff's claims, the court finds that LMRA preemption does not apply.

Having found that none of Defendants' asserted bases for subject matter jurisdiction exist, the court will grant Plaintiff's motion to remand.

## CONCLUSION

For the reasons explained above,

1.    Plaintiff's motion to remand this action (Doc. No. 18) is granted;

2.    Plaintiff's request for judicial notice (Doc. No. 19) is granted in part and denied in part, as set forth herein;

3.    This action is remanded to the Sacramento County Superior Court for all further proceedings;

4.    Defendant C&S Wholesale Grocers, LLC's motion to compel arbitration (Doc. No. 12) is denied as having been rendered moot by this order;

5.    Defendant C&S Logistics of Sacramento/Tracy LLC's motion to dismiss (Doc. Nos. 13) is denied as having been rendered moot by this order;

6.    Defendant C&S Wholesale Grocers, LLC's motion to dismiss (Doc. No. 14) is denied as having been rendered moot by this order; and

7.    The Clerk of the Court is directed to close this case.


IT IS SO ORDERED.

Dated:   **November 18, 2024**

Dena Coggins
United States District Judge

22